

Tagged Opinion

## ORDERED in the Southern District of Florida on April 18, 2007.

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | CASE NO.: 05-36668-BKC-PGH |
| James Gelinas and Virginia M. Gelinas, | CHAPTER 7 |
|     Debtor. | |
| _____/ | |
| Goodstein Realty Boca Raton, LLC, | |
|     Plaintiff, | ADV. NO.: 06-1356-BKC-PGH-A |
| v. | |
| James R. Gelinas and Virginia M. Gelinas, | |
|     Defendants. | |
| _____/ | |

### ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT III OF ITS COMPLAINT TO DETERMINE DEBT NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523

**THIS MATTER** came before the Court on February 12, 2007, upon

Goodstein Realty Boca Raton, LLC's ("Plaintiff") *Motion for*

*Partial Summary Judgment on Count III of its Complaint to Determine Debt Non-Dischargeable Pursuant to 11 U.S.C. § 523* (the "Motion").

Plaintiff filed a complaint asserting that a debt owed by James R. Gelinas ("Mr. Gelinas") and Virginia M. Gelinas ("Mrs. Gelinas")(collectively, "Defendants") is nondischargeable pursuant to three subsections of 11 U.S.C. § 523 (the "Complaint"). The debt is based upon an arbitration award (the "Arbitration Award") entered against Defendants, former employees of Plaintiff. The Motion asserts that the Arbitration Award, which does not contain specific findings of fact or a basis for the award, determined that Defendants inflicted a willful and malicious injury upon Plaintiff and the Arbitration Award is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

The issue before the Court is whether the application of collateral estoppel to the Arbitration Award establishes that the debt is non-dischargeable as a wilful and malicious injury pursuant to section 523(a)(6). As discussed below, the Court finds that the requirements of collateral estoppel have not been met and that the entry of summary judgment would be inappropriate.

2

## BACKGROUND

Plaintiff is engaged in the business of providing real estate brokerage services.[1]  On March 1, 2001, Plaintiff entered into a Broker Services Agreement (the "Broker Agreement") with Mr. Gelinas, a licensed real estate broker in Florida.  The Broker Agreement recited that Mr. Gelinas was affiliated with Accent Realty, a competing real estate brokerage firm, and that all payments of advances, commissions and expenses for the benefit of Mr. Gelinas would be paid to Accent Realty.  Under the terms of the Broker Agreement, Plaintiff advanced commissions to Mr. Gelinas in the amount of $15,000.00, to be repaid to Plaintiff from future commissions earned by Mr. Gelinas.

On November 18, 2001, Teresa Brennan ("Ms. Brennan") entered into an Exclusive Right of Sale Listing Agreement (the "Listing Agreement") with Plaintiff for a three month term for the purpose of selling her property located in Oceanridge, Florida (the "Brennan Property").  The Listing Agreement provided that Mr. Gelinas would serve as the brokerage agent for the transaction, and that Ms. Brennan would retain the right to cancel the Listing Agreement at any time without penalty.  The Brennan Property was listed at $1,700,000.  During the pendency of the Broker Agreement, Mr. Gelinas communicated with developer Frank McKinney

---

[1] All facts are taken from the parties' Joint Stipulation of Facts filed on March 21, 2007, unless otherwise noted.

and his company, Ocean Ridge Development Company, LLC ("Ocean Ridge"), regarding the Brennan Property.

In approximately late November or early December, 2001, Mr. Gelinas' employment was terminated by Plaintiff.  On December 3, 2001, Mr. Gelinas faxed the legal description of the Brennan Property to Scott Elk, the attorney for Ocean Ridge.

On December 10, 2001, Ms. Brennan faxed a cancellation notice to Plaintiff from Mr. Gelinas' home office, stating that Ms. Brennan intended to move back into the home and no longer wished to sell the Brennan Property.  On December 14, 2001, Ocean Ridge offered to purchase the Brennan Property.  On December 17, 2001, Ms. Brennan signed the purchase and sale contract with Ocean Ridge, which named Mr. Gelinas as the broker for the transaction.  A closing on the Brennan Property occurred in January, 2002, for a sales price of $1,187,500.00.  The commission from the sale, totaling $59,375.00, was received by either Mr. Gelinas or Accent Realty.

On February 25, 2002, Plaintiff filed a complaint against Defendants with the State of Florida Department of Business and Professional Regulation (the "License Complaint").  Simultaneously, Plaintiff also filed a complaint against Defendants with the Grievance Committee of the Realtors Association of the Palm Beaches, Inc (the "Ethics Complaint").

Both the License Complaint and the Ethics Complaint

(collectively the "Complaints") alleged that Mr. Gelinas intentionally and fraudulently interfered with Plaintiff's customers and listings by inducing customers to cancel their listings with Plaintiff and re-list their properties with Accent Realty.  The Complaints cited the Ms. Brennan transaction as an example of Mr. Gelinas' conduct, asserting that Mr. Gelinas directed Ms. Brennan to cancel her listing with Plaintiff.  The Complaints alleged that when Plaintiff's agent called Ms. Brennan, Ms. Brennan stated that Mr. Gelinas had found a buyer and was taking care of the sale of the Brennan Property.  The Complaints further alleged that Plaintiff discovered that Mr. Gelinas listed a number of properties with Accent Realty while the Broker Agreement was in effect, and that Plaintiff paid the sales and marketing costs related to these properties.  Finally, the Complaints alleged that by deliberately listing properties under Accent Realty, Mr. Gelinas ensured that Plaintiff would never be repaid the $15,000.00 in commissions advanced by Plaintiff to Mr. Gelinas.

The License Complaint did not assert which provisions of Florida law Defendants allegedly violated.  The Ethics Complaint alleged violations of  Article 16, Sections 16-4,[2] 16-18,[3] and

---

[2]Article 16, section 16-4 provides:

> Realtors shall not solicit a listing which is currently listed exclusively with another broker.  However, if the listing broker, when

5

16-20[4] of the Code of Ethics and Standards of Practice of the National Association of Realtors (the "Ethics Code").

On March 18, 2003, the Department of Business & Professional Regulation entered closing orders in favor of Defendants. The closing order for Mr. Gelinas (the "Gelinas Closing Order") determined that the License Complaint involved a contractual

---

asked by the Realtor, refuses to disclose the expiration date and nature of such listing; i.e., an exclusive right to sell, an exclusive agency, open listing, or other form of contractual agreement between the listing broker and the client, the Realtor may contact the owner to secure such information and may discuss the terms upon which the Realtor might take a future listing or, alternatively, may take a listing to become effective upon expiration of any existing exclusive listing.

[3] Article 16, section 16-18 provides:

Realtors shall not use information obtained from listing brokers through offers to cooperate made through multiple listing services or through other offers of cooperation to refer listing brokers' clients to other brokers or to create buyer/tenant relationships with listing brokers' clients, unless such use is authorized by listing brokers.

[4] Article 16, section 16-20 provides:

Realtors, prior to or after terminating their relationship with their current firm, shall not induce clients of their current firm to cancel exclusive contractual agreements between the client and that firm. This does not preclude Realtors (principals) from establishing agreements with their associated licenses governing assignability of exclusive agreements.

dispute and that there was insufficient evidence to establish a violation of Florida license law.

On April 10, 2003, the Ethics Complaint was heard by a panel of five arbitrators ("Arbitration Panel"). On the same date, the Arbitration Panel issued the Arbitration Award in the amount of $36,153.73 in favor of Plaintiff, which was payable within ninety days of the Arbitration Award becoming final.  The Arbitration Award did not contain any factual findings, nor did it specify which provisions of the Ethics Code were violated.

On June 20, 2003, the Realtors Association of the Palm Beaches, Inc. conducted a procedural review of the Arbitration Award at the request of Defendants and affirmed the Arbitration Award.  On October 2, 2003, Plaintiff filed a Petition to Confirm Arbitration Award in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County (the "Circuit Court"). Defendants and Accent Realty filed a Motion to Dismiss or Alternative Motion to Vacate or Modify Award in Arbitration in the Circuit Court.  On January 29, 2004, the Circuit Court entered a final judgment confirming the Arbitration Award and awarding to Plaintiff compensatory damages in the amount of $36,153.73 and court costs of $326.00.

On October 12, 2005, Defendants filed a Chapter 7 proceeding.  On April 6, 2006, Plaintiff filed this adversary proceeding.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  The parties have stipulated that this is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (I).

### A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that Summary Judgment is appropriate if the Court determines that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "In determining whether a genuine question of material fact exists, the Court must consider all evidence in the light most favorable to the non-movant." *Pilkington v. United Airlines, Inc.*, 921 F. Supp 740, 744 (M.D. Fla. 1996).  In considering a motion for summary judgment, "the court's responsibility is not

8

to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987) (citing *Anderson*, 477 U.S. at 248). "Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. . . If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Herzog v. Castle Rock Entertainment*, 193 F. 3d 1241, 1246 (11th Cir. 1999).

### B.  Doctrine of Collateral Estoppel

Under the doctrine of collateral estoppel, or issue preclusion, a party cannot re-litigate issues that have already been determined in a prior action. *DirecTV v. Deerey (In re Deerey)*, 343 B.R. 308, 310 (Bankr. M.D. Fla. 2006) The Supreme Court has held that collateral estoppel principles apply in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 (1991). "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute which ... directs a federal court to refer to the preclusion law of the State in which the judgment was rendered". *Marrese v. American Academy of Orthopaedic*

9

*Surgeons,* 470 U.S. 373, 380 (1985).  In this case, the
Arbitration Award was rendered in Florida, and therefore
Florida's collateral estoppel law applies.

Under Florida law, the following elements are required for
the application of collateral estoppel:  (1) an identical issue
must have been presented in the prior proceedings; (2) the issue
must have been a critical and necessary part of the prior
determination; (3) there must have been a full and fair
opportunity to litigate that issue; (4) the parties in the two
proceedings must be identical; and (5) the issues must have been
actually litigated.  *Cook v. State*, 921 So. 2d 631 (Fla. 2d DCA
2005).  Under Florida law, arbitration awards may serve as the
basis for collateral estoppel.  *See Dadeland Depot, Inc. v. St.
Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006).

Collateral estoppel may apply in cases even when the
underlying arbitration award does not make a finding of fact.
*See, e.g., Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d
1352, 1361 (11th Cir. 1985); *Tamari v. Bache & Co.,* 637 F.Supp.
1333, 1336-1337 (N.D. Ill. 1986); *O'Brien v. Zangara (In re
Zangara),* 217 B.R. 26, 32 (Bankr. E.D.N.Y. 1998).  However,
courts should refrain from applying collateral estoppel to
arbitration awards that do not issue written findings and reasons
unless the findings and reasons are necessarily implied from the
nature of the claim and award.  *See Zangara*, 217 B.R. at 32

10

(*citing Universal American Barge Corp v. J-Chem, Inc.,* 946 F.2d
1131, 1137 (5th Cir. 1991)).  The party seeking preclusion is
required to demonstrate "with clarity and certainty" what was
determined by the prior judgment.  *Id.*  Therefore, in this case,
Plaintiff is charged with demonstrating, with clarity and
certainty, that the issue heard and decided by the Arbitration
Panel is identical to the one presented in the Complaint.

## C.  11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for
willful and malicious injury by the debtor to another entity or
to the property of another entity."  11 U.S.C. § 523(a)(6).
"Malicious" is defined as "wrongful and without just cause or
excessive even in the absence of personal hatred, spite or ill-
will."  *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th
Cir. 1995)(citations omitted).  Malice may be implied or
constructive, if the nature of the act itself implies a
sufficient degree of malice.  *Id.*

"The word 'willful' in subsection (6) modifies the word
'injury,' indicating that nondischargeability takes a deliberate
or intentional injury, not merely a deliberate or intentional act
that leads to injury."  *Kawaauhau v. Geiger,* 523 U.S. 57, 61
(1998).  *Kawaauhau* holds that neither reckless nor negligent
conduct gives rise to a non-dischargeable debt pursuant to
section 523(a)(6).  *Id.* at 64.

11

### D.  Analysis

Plaintiff asserts that after considering the Ethics Complaint, the only rational finding that the Arbitration Panel could have made to support the Arbitration Award, was that Mr. Gelinas induced Ms. Brennan to cancel the Listing Agreement with Plaintiff and enter into an oral commission agreement with Mr. Gelinas to sell the Brennan Property to Ocean Ridge.  As part of this implied finding, Plaintiff asserts that the Arbitration Panel determined that the inducement was willful and malicious.

Defendants respond that the Arbitration Award was based purely on a contractual dispute between Plaintiff and Defendants. Defendants further argue that the Arbitration Award did not make a specific finding that the debt was the result of a willful and malicious injury to Plaintiff or that the debt resulted from fraud.[5]  As discussed above, the lack of a specific finding of fact in and of itself, is not always fatal to a claim of collateral estoppel.  *See Greenblatt*, 763 F.2d at 1361.  However, in this case the Court finds that the requirements for the application of collateral estoppel have not been met.  A reading

---

[5] Counts I and II of the Complaint assert that Defendants should be denied their discharge based on 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)4), both of which require an element of fraud. However, neither of these counts were included in the Motion. Therefore, the Court declines to address Defendants' argument that the Arbitration Panel failed to make specific findings as to fraud.

of the Ethics Code indicates that neither "malice" nor "willfulness" were required for a determination that Defendants violated Sections 16-4, 16-18, or 16-20 of the Ethics Code. Thus, Plaintiff has not met its burden to demonstrate that the issues of malice and willfulness were litigated before the Arbitration Panel and are a critical and necessary part of the Arbitration Award.

*Zangara*, which Plaintiff cites in support of its Motion, illustrates this principle in the context of both 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(6).  In *Zangara*, an investor brought an arbitration proceeding against the debtor asserting that the debtor made unauthorized trades in his account in violation of several provisions of federal and Texas law. *Zangara*, 217 B.R. at 29.  The arbitration panel issued an arbitration award in favor of the investor, clearly delineating the three Texas fraud statutes which served as the basis for its award, but not issuing specific findings of fact or its reasoning.  *Id.*  The *Zangara* court noted that "the absence of specific factual findings and reasoning is counterbalanced by the fact that arbitrators have clearly enunciated the statutory basis for the [a]ward ..." *Id.*  The debtor later filed for bankruptcy and the investor commenced a non-dischargeability action against the debtor.  *Id.* at 28.

In determining that collateral estoppel applied to the

investor's section 523(a)(2)(A) claim, the *Zangara* court reviewed the investor's statement of claim, the Texas statutes relied upon by the arbitration panel in issuing the award, and the unambiguous language of the arbitration award itself. *Id*. at 32. After a thorough review of the elements required under both the Texas fraud statute and section 523(a)(2)(A), the *Zangara* court held that the arbitration proceeding decided an issue identical to that posed by a section 523(a)(2)(A) cause of action and found that summary judgment was appropriate. *Id*.

However, the *Zangara* court found that summary judgment was not warranted as to the investor's section 523(a)(6) claim. *Id*. at 35.  In making that determination, the *Zangara* court held that the investor had not established that the section 523(a)(6) issues of malice and willfulness were identical to the elements required to prove violations of any of the Texas statutes relied upon by the arbitration panel in rendering the award. *Id.*

Likewise, after reviewing the Ethics Complaint, Ethics Code, and Arbitration Award, the Court finds that Plaintiff here has not met its burden to demonstrate that collateral estoppel should be applied to the Arbitration Award.  Plaintiff has not established that the elements of a section 523(a)(6) cause of action are identical to the elements required to prove a violation of any of the Ethics Code provisions in question. Therefore, summary judgment must be denied.

14

**E.    *Alternative Basis for Denying Summary Judgment***

The Court also finds that summary judgment must be denied because the parties disagree as to the inferences arising from the Arbitration Award.  The Gelinas Closing Order determined that the License Complaint, which is factually identical to the Ethics Complaint, was a contractual dispute.  Defendants infer from the Gelinas Closing Order that the Arbitration Award is the result of a breach of contract.  Plaintiff argues that the injuries alleged in the Ethics Complaint rise to the level of a willful and malicious injury, and that the Arbitration Panel relied on those allegations in rendering the Arbitration Award.  Plaintiff thus infers that the Arbitration Award is based on tortious conduct. As discussed above, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Herzog v. Castle Rock Entertainment*, 193 F. 3d 1241, 1246 (11th Cir. 1999).

<u>CONCLUSION</u>

The Court finds that the requirements for the application of collateral estoppel to the Arbitration Award have not been satisfied, and thus entry of summary judgment is unwarranted.  A trial is therefore necessary.

The Court having considered the submissions of the parties

15

and being otherwise fully advised in the premises hereby:

**ORDERS AND ADJUDGES** that Plaintiff's Motion is **DENIED.**

### ###

Copies Furnished To:

Rilyn A. Carnahan, Esq.
222 Lakeview Ave #1330
West Palm Beach, FL 33401

Eric S. Glatter
2000 Glades Rd # 204
Boca Raton, FL 33431

AUST

Plaintiff's Attorney is directed to serve a copy of this Order on
all interested parties not listed above.

16