

**ORDERED in the Southern District of Florida on November 12, 2008.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

```
              UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF FLORIDA
                 WEST PALM BEACH DIVISION

In re:                            Case No.:05-36668-BKC-PGH
                                  Chapter 7
JAMES R. GELINAS and
VIRGINIA M. GELINAS,

      Debtors.
_____/

GOODSTEIN REALTY
BOCA RATON, LLC                   Adv. No.:06-01356-BKC-PGH-A

      Plaintiff,
v.

JAMES R. GELINAS and
VIRGINIA M. GELINAS,

      Defendants.
_____/
```

MEMORANDUM ORDER ON REMAND FROM DISTRICT COURT

**THIS MATTER** came before the Court for status conference on October 6, 2008 upon the United States District Court for the Southern District of Florida's (the "District Court") *Order*

*Vacating Bankruptcy Court Orders; Remanding Adversary Proceeding; Closing Case* ("District Court's Order"). *Goodstein v. Gelinas*, No. 08-80083 (S.D. Fla. August 8, 2008). The Court, having reviewed the District Court's Order, the documentary evidence, the testimony of the witnesses, and being otherwise fully advised in the premises, hereby finds the debt is not excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

## **PROCEDURAL POSTURE**

This matter came to trial on August 21, 2007 and September 4, 2007 upon Goodstein Realty Boca Raton, LLC's ("Plaintiff") *Complaint to Determine Debt Non-Dischargeable Pursuant to 11 U.S.C. § 523* ("Complaint"). The Complaint, filed on April 6, 2006, sought a determination that debt owed by James R. Gelinas ("Mr. Gelinas") and Virginia M. Gelinas ("Mrs. Gelinas")(collectively, "Defendants") was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523 (a)(4), and/or 523(a)(6).

On October 9, 2007, this Court entered a *Memorandum Order on Plaintiff, Goodstein Realty Boca Raton, LLC's, Complaint to Determine Debt Nondischargeable Pursuant to 11 U.S.C. § 523* (the "Order") and a *Final Judgment* (collectively, the "Orders") in favor of the Defendants. On October 18, 2007, the Plaintiff filed a Notice of Appeal. The District Court's Order vacated this Court's Orders and remanded the matter. On October 6, 2008, a

status conference was held at which the Plaintiff and the Defendants agreed that additional testimony was unwarranted.

This Court's Orders were sustained with respect to the following determinations: 1) the Plaintiff failed to present sufficient evidence to prove that the Defendants fraudulently induced Teresa M. Brennan ("Mrs. Brennan") to cancel her listing with the Plaintiff; 2) the Plaintiff failed to establish that collateral estoppel could properly be applied to the Arbitration Award to establish the elements to show that the debt was a debt for willful and malicious injury under § 523(a)(6); and 3) the Plaintiff failed to present sufficient evidence that the Defendants' conduct with respect to the sale of the Brennan Property constituted embezzlement or larceny under § 523(a)(4).

The District Court's Order, however, remanded the adversary proceeding as to two narrow issues. On remand, this Court is to make findings of fact as to: 1) whether Mr. Gelinas' actions in typing and faxing a letter, dated December 10, 2001, to himself at Goodstein Realty on behalf of Mrs. Brennan were false statements made by Mr. Gelinas with the intention of deceiving the Plaintiff and whether the other elements of § 523(a)(2)(A) are satisfied with respect to the letter, thereby rendering the debt nondischargeable under § 523(a)(2)(A); and 2) whether the Court's findings of fact regarding Mr. Gelinas, in typing and faxing the letter, dated December 10, 2001, to himself while in negotiations to sell

3

property located in Oceanridge, Florida (the "Brennan Property"), revises the Court's § 523(a)(6) analysis to render the debt nondischargeable as a debt for willful and malicious injury.

## FINDINGS OF FACT

On March 1, 2001, the Plaintiff entered into a Broker Service Agreement with Mr. Gelinas.  (Pl. Ex. 2.)  Pursuant to the Broker Service Agreement, the Plaintiff advanced $15,000.00 to Mr. Gelinas ("Advance"), which was to be repaid from Mr. Gelinas' future commissions.  On November 18, 2001, Mrs. Brennan entered into an Exclusive Right of Sale Listing Agreement with the Plaintiff ("Listing Agreement")(Pl. Ex. 3), by and through Mr. Gelinas as an authorized listing agent of the Plaintiff, for the Brennan Property.  Mrs. Brennan retained the right to cancel the listing at any time with no penalty to herself under the Listing Agreement. The Plaintiff's office manager, Bonnie Lazar, terminated the Plaintiff's employment of Defendants in late November, 2001.

Mr. Gelinas testified that Mrs. Brennan orally terminated the Listing Agreement in late November, 2001. (Trial Tr. 94, Aug. 21, 2007.)  Plaintiff, however, did not accept Mrs. Brennan's oral cancellation.  (Trial Tr. 94.)  Mr. Gelinas further testified that at the request of Mrs. Brennan, he typed a cancellation notice, dated December 10, 2001 ("December 10th Letter"), which Mrs.

4

Brennan signed, and he faxed it to the Plaintiff.[1]  (Pl. Ex. 4; Trial Tr. 66-67.)  The December 10th Letter was addressed to "Jim Gelinas, Goodstein Realty."  (Trial Tr. 69.)  Mr. Gelinas explained that although he believed he had been terminated by the Plaintiff, he "probably wanted it to appear that it came from her to me," because "[Mrs. Brennan's] contact at Goodstein Realty was Jim Gelinas" and he acted "just so that she could get her listing cancelled according to her wishes." (Trial Tr. 69-70.) Plaintiff, however, did not accept the December 10th Letter.  (Trial Tr. 93.) Mr. Gelinas testified that he then advised Mrs. Brennan to handwrite a notice of cancellation, which she dated December 17, 2001, and he delivered it to the Plaintiff on her behalf. (Pl. Ex. 5; Trial Tr. 93.)  The Plaintiff did not assert that it refused to accept the handwritten note.  Nor did the Plaintiff contend that the agreement was not terminated by the handwritten note.

On December 3, 2001, Mr. Gelinas faxed Scott Elk, as trustee for Ocean Ridge Development Company, LLC ("Buyer"), a survey of the Brennan Property.  (Pl. Ex. 16.)  The facsimile cover sheet listed the Defendants' company as Accent Realty.  (Pl. Ex. 16.)  On December 14, 2001, Scott Elk, acting for the Buyer, executed a Purchase and Sale contract offering to purchase the Brennan

---

[1] The December 10th Letter states in part, "Please cancel the listing on my property located in Ocean Ridge, Fl, at 4555 Coquina Rd.  I am moving back to the home and do not wish to sell at this time." (Pl. Ex. 5.)

5

Property for $1,187,500.00.  Mrs. Brennan accepted the offer by signing the contract on December 17, 2001. (Pl. Ex. 11.)  The Closing Statement indicates that Accent Realty received a brokerage commission in the amount of $59,375.00. (Pl. Ex. 18.)

Mr. Gelinas testified it was his understanding that he "had the right to proceed to sell [the Brennan Property] as Accent Realty because [Mrs. Brennan] had cancelled her listing" verbally in late November.  (Trial Tr. 87.)  Mr. Gelinas also testified that it was his belief that "[t]here wasn't an active listing at that point in time. [Mrs. Brennan] cancelled the listing verbally, which is legal as I understand it, and Bonnie Lazar refused to accept the cancellation."  (Trial Tr. 68.)

In February 2002, the Plaintiff filed an ethics and fee arbitration complaint against the Defendants with the Grievance Committee of the Realtors Association of the Palm Beaches, Inc. ("RAPB"). (Pl. Ex. 6).  The panel of Arbitrators entered an Arbitration Award against Defendants and Accent Realty in the amount of $36,153.75 ("Arbitration Award").  (Pl. Ex. 7.)  The Defendants and Accent Realty failed to pay the awarded sum.  On October 3, 2003, the Plaintiff filed a Petition to Confirm Arbitration Award in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("State Court"). (Pl. Ex. 9.)  On January 29, 2004, the State Court entered a Final Judgment confirming the Arbitration Award and awarding the

Plaintiff compensatory damages in the amount of $36,153.73, pursuant to the Award of Arbitration, plus $326.00 in court costs. (Pl. Ex. 10.) The Plaintiff sought to except the Arbitration Award and the Advance from the Debtors' discharge.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

In making determinations as to whether debts are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6), the Court is obliged "to construe strictly exceptions to discharge in order to give effect to the fresh start policy of Bankruptcy Code." *Hoffend v. Villa, (In re Villa)*, 261 F.3d 1148, 1152 (11th Cir. 2001)(*citing In re Walker*, 48 F.3d 1161, 1164-65 (11th Cir. 1995)); *see also In re Miller,* 39 F.3d 301, 304 (11th Cir. 1994)(*quoting Caspers v. Van Horne,* 823 F.2d 1285, 1287 (8th Cir. 1987)("[E]vidence presented must be viewed consistent with congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code.")); *Taylor v. Wood (In re Wood*), 2007 WL 2376788, at *1 (11th Cir. Aug. 21, 2007)("[C]ourts generally construe the statutory exceptions to discharge in bankruptcy liberally in favor of the debtor, and recognize that the

7

reasons for denying a discharge . . . must be real and substantial, not merely technical and conjectural.")(*citing In re Miller*, 39 F.3d at 304). The burden of proof for § 523 exceptions to discharge is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991).

**I.   Count I - § 523(a)(2)(A)**

The District Court remanded this adversary proceeding for determination as to whether Mr. Gelinas' actions in typing and faxing the December 10th Letter to himself at Goodstein Realty on behalf of Mrs. Brennan were false statements made by Mr. Gelinas with the intention of deceiving the Plaintiff, and whether the other elements of § 523(a)(2)(A) are satisfied with respect to the December 10th Letter, thereby rendering the debt nondischargeable under § 523(a)(2)(A).

Section 523(a)(2)(A) provides in pertinent part that:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt . . .
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

According to the Eleventh Circuit, the elements required to establish a claim under § 523(a)(2)(A) are: 1) the debtor made a

false statement with the purpose and intention of deceiving the creditor; 2) the creditor relied on the false statement; 3) the creditor's reliance on the false statement was justifiably founded; and 4) the creditor sustained damage as a result of the false statement. *Fuller v. Johannessen (In re Johannessen)*, 76 F.3d 347, 350 (11th Cir. 1996).

To prove an exception from discharge under § 523(a)(2)(A), the first element requires the debtor to make a false statement with the purpose and intention of deceiving the creditor. *Id.* at 350. The Court finds that Mr. Gelinas' act of typing and faxing the December 10th Letter to himself did not constitute a false statement. Mr. Gelinas testified that Mrs. Brennan "asked [him] to prepare a letter for her signature, and [he] attached her signature to the letter that was given to Goodstein Realty . . . ." (Trial Tr. 66.) The December 10th Letter was addressed to "Jim Gelinas, Goodstein Realty." Mr. Gelinas further testified that, although he believed the Plaintiff had terminated his employment, he "probably wanted it to appear that it came from her to me," because "[Mrs. Brennan's] contact at Goodstein Realty was Jim Gelinas" and he acted "just so that she could get her listing cancelled according to her wishes." (Trial Tr. 69-70.)

In addition, the Defendants presented evidence that Mrs. Brennan attempted to cancel the Listing Agreement on two other occasions, once verbally in late November, 2001, and again through

a handwritten notice dated December 17, 2001. (Trial Tr. 87; Pl. Ex. 5.)  This evidence supports the conclusion that Mrs. Brennan requested Mr. Gelinas type and send the December 10th Letter to the Plaintiff on her behalf.  The Plaintiff presented no evidence that Mrs. Brennan did not sign the December 10th Letter or that she did not intend to cancel the agreement.  If the December 10th Letter contained false statements, the false statements were those of Mrs. Brennan, not Mr. Gelinas.  The Court notes, however, that at issue is whether Mr. Gelinas' act of typing and faxing the December 10th Letter constituted a false statement by Mr. Gelinas and not whether the December 10th Letter itself contained false statements.  Because the Court finds that Mr. Gelinas' act of typing and faxing the December 10th Letter to himself does not constitute a false statement by Mr. Gelinas, the Court finds it unnecessary and illogical to determine whether the purpose and intention of the statement was to deceive the Plaintiff.

The second element of § 523(a)(2)(A) requires the creditor to have relied on the false statement. *Johannessen*, 76 F.3d at 350.  The Defendants testified that the Plaintiff did not accept the December 10th Letter.  The Plaintiff did not dispute this testimony.  Because no contrary evidence was presented, the Court presumes that the Plaintiff accepted and relied on Mrs. Brennan's subsequent handwritten note cancelling the listing.  (Pl. Ex. 5.)  The Plaintiff does not assert that it refused to accept the

handwritten note. Nor does the Plaintiff contend that the agreement was not terminated by the handwritten note.

The Court concludes that even if it were to assume that Mr. Gelinas' act of typing and faxing the December 10th Letter to himself constituted a false statement, the Plaintiff could not establish that it relied on the act because it refused to accept the December 10th Letter. As to the two remaining elements, even if the Court were to assume that Mr. Gelinas' act of typing and faxing the December 10th Letter to himself constituted a false statement, the Court finds that the Plaintiff did not justifiably rely on the act, and that the Plaintiff sustained no damages as a result of the act because the Plaintiff did not rely on the December 10th Letter. *See Johannessen*, 76 F.3d at 350.

The Court concludes that Mr. Gelinas did not engage in false pretenses, false representation, or actual fraud by typing and faxing the December 10th Letter to himself. Accordingly, the Court finds that the debt is not excepted from discharge pursuant to § 523(a)(2)(A).

## II. Count III - § 523(a)(6)

The District Court remanded this adversary proceeding for determination as to whether the Court's findings of fact regarding Mr. Gelinas' act of typing and faxing the December 10th Letter to himself while "he was in negotiations to sell the Brennan

11

property[2] constituted actual fraud, fraudulent misrepresentations, or false pretenses, thereby rendering the debt nondischargeable pursuant 11 U.S.C. § 523(a)(6). *Goodstein v. Gelinas*, No. 08-80083, at 15.

Section 523(a)(6) provides in pertinent part that:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt . . .
 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6).

In order to establish that a debt is nondischargeable under § 523(a)(6), the debt must be a debt for both willful and malicious injury. As to the willful prong, the Eleventh Circuit has stated that "a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *In re Thomas*, 2008 WL 1765264, at * 2 (11th Cir. Apr. 18, 2008). As to the "malicious" prong, the Eleventh Circuit has "defined that term as used in section 523 as 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)(*quoting Sunco Sales, Inc. v Latch (In re Latch)*,

---

[2] Although the quoted language from the District Court's Order may imply that Mr. Gelinas was in negotiations for the sale of the Brennan Property, this Court assumes that the District Court intended this Court to consider Mr. Gelinas' act while he was negotiating on behalf of Mrs. Brennan.

820 F.2d 1163, 1166 n.4 (11th Cir. 1987)).

This Court previously concluded that the Plaintiff failed to prove that the Defendants' breach of contract, which might have established the "willful" prong, was accompanied by malice so as to except the debt from discharge pursuant to § 523(a)(6). *Goodstein v. Gelinas*, No. 06-01356, at 21-22 (Bankr. S.D. Fla. October 9, 2007). The "mere failure to abide by contractual obligations is not sufficient to sustain an exception to discharge" under § 523(a)(6). *Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 339 (Bankr. N.D. Ind. 2006); *see, e.g., Lockerby v. Sierra*, 535 F.3d 1038, 1042 (9th Cir. Aug. 7, 2008)("Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to 'start afresh.'"); *Prewett v. Iberg (In re Iberg)*, 395 B.R. 83, 90 (Bankr. E.D. Ark. October 16, 2008)(*quoting Lockerby*, 535 F.3d at 1038)("[I]n breach of contract cases, 'something more' is necessary to exempt a debt from discharge - tortious conduct")).

The Court has no cause to alter its previous conclusion that the debt is not excepted from discharge pursuant to § 523(a)(6). The Court finds that Mr. Gelinas did not engage in actual fraud, fraudulent misrepresentations, or false pretenses by typing and faxing the December 10th Letter to himself while Mrs. Brennan was in negotiations to sell the Brennan property. As to the December

13

10th Letter, the Plaintiff presented no evidence that Mrs. Brennan did not sign the December 10th Letter or that she did not intend to cancel the agreement.  As to the negotiations to sell the Brennan Property, Mr. Gelinas testified that it was his understanding that he "had a right to proceed to sell [the Brennan Property] as Accent Realty because [Mrs. Brennan] had cancelled her listing" verbally in late November. (Trial Tr. 87.)  Mr. Gelinas also testified that it was his belief that "[t]here wasn't an active listing at that point in time. [Mrs. Brennan] cancelled the listing verbally, which is legal as I understand it, and Bonnie Lazar refused to accept the cancellation."  (Trial Tr. 68.)  Moreover, the Listing Contract provided that Mrs. Brennan retained the right to cancel the listing at any time with no penalty to herself.  The Plaintiff has not established by a preponderance of the evidence that Mr. Gelinas' act of typing the December 10th Letter for Mrs. Brennan's signature and faxing it to himself at Goodstein Realty was wrongful and without just cause, or excessive.  Although Mr. Gelinas might have mistakenly or intentionally breached the Broker Service Agreement, the Plaintiff failed to present sufficient evidence to establish that Mr. Gelinas breached the contract with the requisite malice to provide a basis for exception pursuant to § 523(a)(6).[3]

---

[3] "Historically, injuries resulting from breaches of contract are treated very differently from injuries resulting from torts.  In contract law, '[t]he motive for the breach commonly is immaterial in an action on the contract.' *Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 547 (1903).  The concept of 'efficient breach' is built into our system of

**CONCLUSION**

The Plaintiff bears the burden to prove by a preponderance of the evidence that the Arbitration Award and the Advance are debts that should be excepted from discharge pursuant to §§ 523(a)(2)(A) and 523(a)(6). The Court is obliged to construe § 523 exceptions to discharge liberally in favor of debtors. *See In re Miller,* 39 F.3d at 304. The Court finds that Mr. Gelinas' act of typing and faxing the December 10th Letter to himself did not constitute a false statement by Mr. Gelinas, and that the Plaintiff did not rely on the act. The Court further finds that Mr. Gelinas did not engage in actual fraud, fraudulent misrepresentations, or false pretenses by typing and faxing the December 10th Letter to himself while Mrs. Brennan was in negotiations for the sale of the Brennan Property. The Plaintiff failed to establish that the debt is a debt for malicious and willful injury. Accordingly, the debt is not subject to exception from discharge under 11 U.S.C. § 523(a)(2)(A) or § 523(a)(6).

**ORDER**

The Court, having reviewed the District Court's Order, the

---

contracts, with the understanding that people will sometimes intentionally break their contracts for no other reason than that it benefits them financially. The definition of intent to injure as the commission of an act 'substantially certain' to cause harm was born from *tort* principles, not contract law principles." *Lockerby*, 535 F.3d at 1042.(alteration and emphasis in original)

documentary evidence, the testimony of the witnesses, and being otherwise fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that:

1) Judgment is awarded in favor of the Defendants.

2) The debts identified as the Arbitration Award and the Advance which are owed by the Defendants to Plaintiff are **DISCHARGED**.

3) Mr. Gelinas' act of typing and faxing the December 10th Letter to himself does not warrant exception from discharge pursuant to § 523(a)(2)(A) because the act does not constitute a false statement by Mr. Gelinas, and the Plaintiff did not rely on the act.

4) Mr. Gelinas did not engage in actual fraud, fraudulent misrepresentations, or false pretenses by typing and faxing the December 10th Letter to himself while Mrs. Brennan was in negotiations for the sale of the Brennan Property. Thus, the Court reaffirms its conclusion that the debt is not excepted from discharge pursuant to § 523(a)(6).

5) Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.

###

Copies furnished to:

Michael Bakst, Esq. is directed to mail a conformed copy of this judgment to all interested parties not listed above and to file a certificate of service with the Court.

James R. Gelinas

Virginia M. Gelinas

AUST